FIRST FEDERAL SAVINGS & LOAN ASSOCIATION
OF MORRILTON *v.* Captain Raimund STACHA et al

84-256                                          688 S.W.2d 269

Supreme Court of Arkansas
Opinion delivered April 15, 1985

*Joe Cambiano; Hardin, Jesson & Dawson;* and *Steve Kirk,* for appellant.

*Tim D. Williams; Clark & Adkisson,* by: *William M. Clark;* and *Henry & Henry,* by: *Robert W. Henry,* for appellees.

GEORGE ROSE SMITH, Justice. This is another case involving a due-on-sale clause — a provision in a mortgage entitling the mortgagee to accelerate the maturity of the entire debt if the debtor sells the property without the mortgagee's consent. Several similar foreclosure suits were consolidated for trial. The chancellor entered a summary

judgment dismissing all the suits, on the ground that the due-on-sale clauses are not enforceable. The appeal comes to us under Rule 29(1)(c). The issue is whether under the controlling federal statute the clauses can be enforced.

The various cases are similar. All the mortgages were made to the appellant, a federal savings and loan association, and were secured by liens on real property. All the mortgages were executed during the "window period" between July 31, 1976, and October 15, 1982. (For an explanation of the window period, see *Abrego* v. *United Peoples Sav. & Loan,* 281 Ark. 308, 664 S.W.2d 858 [1984].) All the debtors sold their property without the Association's consent. Presumably the purchasers refused to refinance the loans at a higher interest rate; so the Association declared the debts immediately due and filed these foreclosure suits upon default. The chancellor, considering the federal statutes not to be applicable, refused to allow the acceleration of maturities, in accord with our holding in *Tucker* v. *Pulaski Fed. Sav. & Loan,* 252 Ark. 849, 664 S.W.2d 858 (1972).

The due-on-sale innovation has had its ups and downs. Arkansas was one of several jurisdictions that by statute or court decision refused to allow a lender to exercise such an option without some equitable reason for the acceleration. Congress, however, was concerned that such restrictions might impair the stability of the national real estate financing market and therefore passed the Garn-St. Germain Depository Institutions Act, effective October 15, 1982. *See* Geier, Due-On-Sale Clauses, 17 San Francisco L. Rev. 355 (1983). The issue here is whether that federal act permits the acceleration of maturities in this case.

The statutory language pertinent to this case is set forth in Section 341 of the Garn-St. Germain Act. 12 U.S.C.A. § 1701j-3. (West Supp. 1984). Subsection (b)(1) provides that notwithstanding any state law or decision to the contrary, a lender may enforce due-on-sale clauses with respect to real property loans. Subsection (c)(1) establishes the window period during which state laws are permitted to remain in force for a limited time. Next, however, is subsection (c)(2), which contains the two subparagraphs on which this case hinges.

(B) A lender may not exercise its option pursuant to a due-on-sale clause in the case of a transfer of a real property loan which is subject to this subsection where the transfer occurred prior to October 15, 1982.

(C) This subsection does not apply to a loan which was originated by a Federal savings and loan association or Federal savings bank.

The appellees contend that subparagraph (B) is applicable, because the transfers to them were prior to October 15, 1982. They, in effect, disregard subparagraph (C) by saying that it does not apply to these mortgages. The appellant, on the other hand, argues that subparagraph (C) confirms the enforceability of due-on-sale clauses, as declared in subsection (b)(1), with respect to all loans originated by a federal savings and loan association such as this appellant.

We think the appellant's position is clearly right. As Geier, *supra*, points out, the reference in subparagraph (C) to "[t]his subsection" was sloppy draftsmanship, because of its lack of precision. Even so, we think the reference is necessarily to all of subdivision (c), for several reasons. First, no other workable meaning can be ascribed to the reference to "this subsection." Second, throughout the section all cross references are to *lettered subsections*, as to *subsection (b), subsection (c),* and *subsection (d).* Hence the reference to "this subsection" evidently follows the same pattern and means all of subsection (c).

Finally, the pertinent Senate committee report pretty well puts the question at rest. That report reads in part:

The United States Supreme Court, in *Fidelity Federal Savings and Loan Association* v. *De La Cuesta,* [458 U.S. 141] (1982), recently upheld the right of federally chartered savings and loan associations and federal savings banks to include and enforce due-on-sale clauses pursuant to a 1976 regulation issued by the Federal Home Loan Bank Board. Hence, the due-on-sale practices for federally chartered thrifts, for loans

originated by those thrifts, will continue to be subject to the Federal Home Loan Bank Board's exclusive regulatory authority. The identity of the lender at the time the loan was originated determines whether or not a loan is subject to window period restrictions.

S. Rep. No. 97-536, 97th Cong., 2d Sess. 24, *reprinted in* 1982 *U.S. Code Cong. & Ad. News* 3054, 3078.

We have no hesitancy in agreeing with Geier's conclusion that the window period exception applies only to non-federal loans, so that the due-on-sale clause in loans originated by a federal savings and loan association such as the appellant continues to be enforceable regardless of state law.

Reversed and remanded for further proceedings.